UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Greg Wersal for Supreme Court Committee, a judicial campaign committee and association; and Bonn Clayton, individually;

Plaintiffs,

v.

Charles E. Lundberg, in his capacity as Chair of the Minnesota Lawyer's Professional Responsibility Board, or his successor; and Edward J. Cleary in his capacity as Director of the Minnesota Office of Lawyer's Professional Responsibility, or his successor;

Defendants.

Civ. File No. 00-1685 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order. For the following reasons, Plaintiffs' Motion is denied and their First Amended Complaint dismissed with prejudice.

**BACKGROUND**

Greg Wersal ("Wersal") is a candidate for the position of Associate Justice of the Minnesota Supreme Court. Wersal's campaign committee, Greg Wersal for Supreme Court Committee ("the Committee"), is a Plaintiff in the instant suit. Also named as Plaintiff is the Committee's chairman, Bonn Clayton ("Clayton"), who was hand-picked by Wersal to

FILED JUL 28 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JUL 28 2000
DEPUTY CLERK

head the Committee. The named Defendants in this case are the Chair of the Minnesota Lawyer's Professional Responsibility Board and the Director of the Minnesota Office of Lawyer's Professional Responsibility. Defendants enforce the Rules of Professional Responsibility, which include the Code of Judicial Conduct, on behalf of the State of Minnesota.

On June 10, 2000, Wersal's candidacy was officially endorsed by the Republican Party of Minnesota ("RPM"). Plaintiffs recognize that under Canon 5(B)(2) of the Code of Judicial Conduct, which precludes judicial campaign committees from seeking, accepting, or using political organization endorsements, they may not use that endorsement for any purpose, most notably to raise campaign funds. Plaintiffs claim, however, that the ban violates their freedom of speech, and should therefore be invalidated. In the interim, Plaintiffs seek to enjoin Defendants from enforcing the ban.

**DISCUSSION**

Defendants argue that this action is barred under the doctrine of res judicata. Under res judicata, now commonly referred to as claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." United States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). A claim is precluded by a prior lawsuit when: (1) the first suit resulted in a final valid judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits are based on the same claim; and (4) both suits involve the same

parties or those in privity with them. See Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998). Additionally, the party against whom res judicata is applied must have had a full and fair opportunity to litigate the matter in the first suit. See id.

The Court is fully aware that this lawsuit is in substance very similar to one litigated in 1998. In fact, this lawsuit is simply a pared down version–both in form and substance–of the prior action. Like Plaintiffs in the present action, the plaintiffs in the 1998 suit sought, among other things, to invalidate Canon 5(B)(2), arguing that it violates the First Amendment.[1] This Court denied the plaintiffs' request for a preliminary injunction, Republican Party of Minnesota v. Kelly, 996 F. Supp. 875 (D. Minn. 1998) (Davis, J.), and ultimately dismissed the plaintiffs' claim on summary judgment, Republican Party of Minnesota v. Kelly, 63 F. Supp.2d 967 (D. Minn. 1999) (Davis, J.), appeal argued, No. 99-4021 (8th Cir. May 10, 2000). Accordingly, the first three res judicata factors are clearly satisfied in this case. Thus, the only factor meriting discussion is that of privity.

The plaintiffs in the 1998 action included Wersal, Campaign for Justice (Wersal's campaign committee), and Mark E. Wersal (Chairman of the Campaign for Justice), as well as several other organizations and individuals not directly linked to Wersal's campaign. The

---

[1] Unlike the 1998 action, this case involves a situation in which there has been an actual endorsement by a political party. Plaintiffs argue that this distinction, which enables them to attack Canon 5(B)(2) in its application as well as in theory, renders the 1998 action entirely distinct for res judicata analysis. The Court disagrees. The legal issues involved have not changed because of the endorsement. As a result, Judge Davis's legal analysis–completely unhampered by the theoretical nature of the issues before him–and decision apply with equal force in this case.

instant lawsuit was filed by Wersal's current campaign committee and its chairman. Although the names of the present Plaintiffs are different from those in the 1998 lawsuit, the Court finds that they are for all intents and purposes the same parties whose interests were fully represented and litigated in the first suit. The relevant Plaintiffs in the 1998 lawsuit were even represented by Plaintiffs' counsel in the instant case. Additionally, although Clayton is named in his individual capacity, Plaintiffs' First Amended Complaint and Clayton's Affidavit reveal that his is really filing this suit in his capacity as chair of Wersal's campaign committee. In addition, during oral argument Plaintiffs' counsel expressly described Clayton's role in the following terms: "a third-party who is running a campaign committee for a candidate for office." That being the case, it is difficult to imagine Clayton using the RPM endorsement in his individual capacity.[2] Rather, it is solely within his capacity as chair of the campaign committee that such actions would be taken. Thus, the Court concludes that the parties are the same. Only the names have changed. As a result, the Court finds that the theory of virtual representation applies in this case, allowing the Court to give the 1998 lawsuit preclusive effect even though the Plaintiffs in this case were technically not parties to that action.

---

[2] At oral argument, Plaintiffs' counsel argued that Clayton has standing to sue in his individual capacity in this case because Canon 5(B)(2) applies expressly to individuals as well as campaign committees. The relevant provisions of Canon 5 belie this contention. In fact, there is no language within Canon 5 that precludes individuals not associated with campaign committees from mentioning political party endorsements. Therefore, the Court strongly doubts whether Clayton, in his individual capacity, has standing to sue in this case. As noted above, however, the Court does not find it necessary to fully address this issue.

The Eighth Circuit first recognized "virtual representation" as an avenue by which a nonparty may be considered in privity with a party to a prior action in Tyus v. Schoemehl, 93 F.3d 449, 454-55 (8th Cir. 1996). Simply stated,

> Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.

Id. at 454 (quoting Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir. 1975)). The following factors are considered in making this determination: (1) there is an identity of interests between the two parties; (2) there is a close relationship between the parties; (3) the present party participated in prior suit; (3) the present party deliberately maneuvered to avoid the effects of the first action; and (4) the first party adequately represented the interests of the present party. See id. at 455-56. Based on the previous discussion of Plaintiffs' relationship to the relevant plaintiffs in the 1998 lawsuit, the Court is satisfied that the theory of virtual representation applies in this case. In particular, the Court notes that the interests of the parties are indistinguishable, and the parties are in substance and status identical. Additionally, the Court finds it noteworthy that Clayton actually participated in the prior lawsuit by filing a declaration on behalf of the plaintiffs.

Furthermore, the Tyus court expressly noted that application of virtual representation is particularly appropriate for issues involving matters of public law, such as the issues in this case. See id. at 456 ("[W]e note that in public law cases, the number of plaintiffs with standing is potentially limitless. If parties were allowed to continually raise issues already

decided, public law claims 'would assume immortality.'"). In sum, the Court is confident that Plaintiffs' interests were adequately represented by the plaintiffs in the 1998 lawsuit.

Finally, the policies underlying the doctrine of res judicata wholly support the dismissal of this lawsuit. Relitigation of this lawsuit would unnecessarily and inexcusably deplete judicial resources. See id. at 453 ("As we have noted, 'in this era of overcrowded dockets the courts have a positive duty to restrict needless relitigation of issues.'") In addition, permitting this case to move forward would fail to protect Defendants from "the expense and vexation of attending multiple lawsuits." See id. at 454 (quoting United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir. 1994)). Therefore, the Court finds that the doctrine of res judicata bars Plaintiffs' suit in its entirety.

Although res judicata precludes this Court from reaching the merits of Plaintiffs' claim, the Court feels compelled to comment that because of Judge Davis's thorough disposition of this claim in the prior action, the issued raised herein simply cannot ever again be litigated. Whatever merit Plaintiffs arguments may have had, they have been definitively adjudicated.

**CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiffs' claim is barred by res judicata. Accordingly, Plaintiffs' Motion is denied and their First Amended Complaint dismissed with prejudice.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order (Clerk Doc. No. 2) is **DENIED**; and

2. Plaintiffs' First Amended Complaint is **DISMISSED WITH PREJUDICE**.

Dated: July 28, 2000

Paul A. Magnuson
United States District Court Judge

JUL 2 8 2000

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

JUL 28 2000

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

U. S. COURT OF APPEALS - EIGHTH CIRCUIT
APPELLANT'S FORM A
Appeal Information Form
To be filed with the Notice of Appeal

Appeal Docket No. ______________

| STYLE OF CASE: | COUNSEL: NAME, ADDRESS, AND TELEPHONE NUMBER |
| --- | --- |
| Appellant/Appellee, | |
| vs. | |
| | COUNSEL: NAME, ADDRESS AND TELEPHONE NUMBER |
| Appellant/Appellee. | |

LIST ISSUES ON APPEAL (For administrative purposes). You may indicate that this also serves as your statement of issues under FRAP 10(b)(3). ( ) Yes. ( ) No.

FOR LEAD COUNSEL ONLY
I ___ have (____ have not) discussed settlement possibilities on appeal with my client.
This appeal ___ is (___ is not) amenable to settlement.

Submitted by: ________________________________________
Signature of Lead Counsel Date

INSTRUCTIONS:

Filing of appellant's Form A is required to be submitted to the Clerk of the District Court with the Notice of Appeal (8 Cir. Rule 3B).
If inadvertently omitted, appellant may file Form A directly with the Clerk of the Court of Appeals before appeal is docketed.
Forms are available at the District Court Clerk's Office and may also be obtained electronically at: www.ca8.uscourts.gov

Copy 1 - White - Send to Appellee (together with an uncompleted Form B)
Copies 2 & 3 - Canary & Pink - Send to Clerk, District Court with Notice of Appeal or Eighth Circuit (see above)
Copy 4 - Goldenrod - Retain

Appeal Docket No. ____________

U. S. COURT OF APPEALS - EIGHTH CIRCUIT

**APPELLEE'S FORM B**

Appeal Information Form

CASE NAME (Underline name of Appellee):

IS THE ALIGNMENT OF PARTIES, NAMES, ADDRESSES, AND TELEPHONE NUMBERS CORRECT ON APPELLANT'S FORM A? ( ) Yes ( ) No If no, list corrections below.

FOR LEAD COUNSEL ONLY

I ___ have (___ have not) discussed settlement possibilities on appeal with my client.
This appeal ___ is (___ is not) amenable to settlement.

NAME, ADDRESS, AND TELEPHONE NUMBER OF LEAD COUNSEL:

Submitted by: ______________________________

Date: ______________________________

Copy 1 - White - Send to Appellant
Copy 2 & 3 - Canary & Pink - Send to Clerk, Eighth Circuit Court of Appeals
Copy 4 - Goldenrod - Retain